Patrick M. Flatley
United States Bankruptcy Judge
Dated: Friday, January 14, 2011 3:12:02 PM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DARRYL EDMOND PALMER, | ) | |
| | ) | |
| Debtor. | ) | Case No. 09-1476 |
| _____ | ) | |
| | ) | |
| BETHANY COLE and | ) | |
| BARBARA COCKERILLE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 09-84 |
| | ) | |
| DARRYL EDMOND PALMER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Darryl Palmer (the "Debtor") owes $28,778.66, plus post-judgment interest, to Bethany Cole[1] and her grandmother, Barbara Cockerille, (the "Plaintiffs") as a result of a final judgment entered by the Circuit Court of Jefferson County, West Virginia (the "State Court"). The Plaintiffs seek to except this amount from the Debtor's anticipated Chapter 11 discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A) and/or (6).

_____

[1]At trial, Ms. Cole stated that she is now married and now known as Bethany Franks. For the purposes of this memorandum opinion, the court will continue to refer to her as Bethany Cole, her name at the time of the underlying transaction and State court litigation.

## I. BACKGROUND

On October 24, 2006, Ms. Cockerille purchased, on credit, a 1994 Mitsubishi 3000 GT from the Debtor, doing business as Matt's Auto World.  She purchased the vehicle for Ms. Cole because Ms. Cole was not of legal age, but Ms. Cole was to make payments and drive the vehicle.  The sales price for the vehicle was $3,135.00, payable in weekly installments of $60.00.  Within a month after the sale, the car fell into disrepair, including a dead battery, bald tires, a broken headlamp, and serious transmission problems.  The car was unable to be legally or mechanically driven.

The Plaintiffs, believing that the car was under warranty, took the car to the Debtor for repairs.   Rather than attempting to repair the vehicle, the Debtor advised the Plaintiffs to continuously pour transmission fluid into the car despite the fact that the transmission already leaked, and told Ms. Cole to jumpstart the car every time she needed to drive.  The Debtor replaced the vehicle's bald tires, but with tires that were oversized, which increased the danger associated with driving the vehicle.[2]  The Debtor also suggested to Ms. Cole that she drive the vehicle into a tree so that the Plaintiffs and the Debtor could collect the insurance proceeds.

Ms. Cole made payments pursuant to the sales agreement for approximately three months, but stopped in January 2007, after the problems with the car made it inoperable.  After the payments ceased, the Debtor attempted to repossess the vehicle by approaching Ms. Cole at her place of employment to inquire about the location of the vehicle.  Achieving no success in that regard, the Debtor used friends of Ms. Cole to locate and repossess the vehicle.  Subsequently, the Debtor gave Ms. Cole an opportunity to retrieve personal belongings from the vehicle; however, much of her property was damaged, destroyed, or disappeared.  The vehicle was eventually sold for $260.00 at the Mason Dixon Public Auto Auction on March 20, 2007.

The underlying State Court action was filed by the Plaintiffs on October 12, 2007, alleging causes of action under the Truth in Lending Act ("TILA"), the West Virginia Consumer Credit & Protection Act ("WVCCPA"), and the Magnuson-Moss Warranty Act.  The Plaintiffs sought damages, including actual and statutory damages, and an award of attorney's fees and litigation

---

[2]The oversized tires were subsequently removed by the Debtor and replaced with the original bald tires, because the oversized tires rubbed against the wheel well when the vehicle's steering wheel was turned.

2

expenses.

The matter went to trial before the State Court on April 1, 2009.  On April 21, 2009, at the conclusion of a bench trial, the State Court entered an order, including findings of fact and conclusions of law, that awarded the Plaintiffs $19,097.36 in compensatory and statutory damages – $1,185.00 for violating TILA, $5,000.00 for violating the Magnuson-Moss Warranty Act, and $12,912.36 for violating the WVCCPA; $9,000.30 for attorney's fees; $681.00 for costs expended in litigation; and post-judgment interest of 7% per annum.  The State Court's relevant findings of fact for non-dischargeability purposes include:

1.  The total price of the car was $3,135.00 and the sale called for payments over time.

2.  The Plaintiffs were charged "interest" in the sales agreement.

3.  The Debtor did not disclose the interest charged or provide any disclosure regarding the terms of credit, but, rather, hid the interest charge in the inflated price of the vehicle.

4.  The Debtor violated TILA because he failed to fully disclose interest costs.  15 U.S.C.A. §§ 1631 and 1638.

5.  The Debtor represented to the Plaintiffs that the car was "good" when, in fact, the car was uninspected in West Virginia and unable to pass a state inspection.

6.  The Debtor breached the warranty of merchantability and the warranty of fitness for a particular purpose because the car was essentially unable to be legally or mechanically driven, and, thus, was unmerchantable and unfit for a person to drive.  15 U.S.C.A. § 2304(a)(4).

7.  To the extent that there was an express warranty, the Plaintiffs took the car to the Debtor for repair of the vehicle's multiple mechanical problems, but the Debtor failed to meet the terms of the warranty and put the financial responsibility on the Plaintiffs to avoid incurring the cost himself. 15 U.S.C.A. § 2304(b)(1).

8.  The Debtor failed to provide the Plaintiffs with notice of the right to cure before the Debtor repossessed the vehicle.  W. Va. Code § 46A-2-106.

9.  The Debtor entered Bethany Cole's workplace, confronted her using profanity and disclosing her debts, and then enlisted her friends in what was essentially a carjacking. W. Va. Code §§ 46A-2-125 and 126.

10.  The contents of the vehicle were damaged, destroyed, or disappeared.

The parties were in front of the State Court again on June 1, 2009, to resolve the Debtor's

3

motion for a new trial filed on April 27, 2009.  After appearing before the State Court on the record, the Debtor withdrew his motion for a new trial and notified the court that he would be filing an appeal.  The Debtor filed a petition for appeal with the West Virginia Supreme Court of Appeals in October 2009, but the petition was denied.  The Debtor filed his Chapter 11 Voluntary Petition on June 30, 2009.

## II.  DISCUSSION

The Plaintiffs contend that the State court judgment was a result of the Debtor obtaining money from them by fraud, and the Debtor's willful and malicious injury to Bethany Cole and/or her property.  11 U.S.C. §§ 523(a)(2)(A), (6).

As the party asserting causes of action arising under § 523(a), the Plaintiffs bear the burden of proof by a preponderance of the evidence.  Fed. R. Bankr. P. 4005; *Grogan v. Garner*, 498 U.S. 279 (1991).  When considering the applicability of an exception to discharge under § 523(a), the court is to construe the statute narrowly in favor of the debtor to protect the primary purpose of the Bankruptcy Code, which is to provide a debtor with a financial fresh start.  *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999).

**A.  Section 523(a)(2)(A):  False Pretenses, False Representations, Actual Fraud**

The Plaintiffs assert that the Debtor made fraudulent misrepresentations regarding the condition and merchantability of the vehicle while negotiating the sales agreement with the Plaintiffs.  Also, they contend that the Debtor failed to disclose the interest charged, or provide any disclosure regarding the terms of credit, by hiding the interest charge in the inflated price of the vehicle in violation of TILA.  15 U.S.C.A. §§ 1631 and 1638.  The Plaintiffs seek to have the damages resulting from these fraudulent acts excepted from the Debtor's expected discharge pursuant to § 523(a)(2)(A).

Section 523(a)(2)(A) excepts from discharge any debt "for money . . . to the extent obtained, by -- (A) false pretenses, a false representation, or actual fraud . . . ."  Not all debts incurred as a result of fraud fall within this exception to discharge; rather, this exception only includes those "debts in which the debtor used fraudulent means to obtain money . . . ."  *Nunnery* v. *Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007).  However, "[o]nce it is established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom is excepted from discharge," *id*. at 222 (citing *Cohen v. De La Cruz*, 523 U.S. 213, 218 (1998)), "including . . .

4

attorney's fees, and other relief that may exceed the value obtained by the debtor." *Cohen*, 523 U.S. at 223. The intent of § 523(a)(2) is "to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means." *Rountree*, 478 F.3d at 219-20.

For purposes of making a non-dischargeability determination, the terms "false pretenses," "false representation," and "actual fraud" are to be interpreted according to the common understanding of those terms at the time § 523(a)(2)(A) was enacted. *E.g., Field v. Mans*, 516 U.S. 59, 69 (1995) ("The operative terms in § 523(a)(2)(A) . . . carry the acquired meaning of terms of art. They are common-law terms, and . . . they imply elements that the common law has defined them to include."). What Congress meant when it used the terms can be derived from the generally shared common law, as set forth in *Restatement (Second) of Torts* (1976), which was published shortly before Congress passed the 1978 Bankruptcy Code. *Field*, 516 U.S. at 70-73. *See also Biondo*, 180 F.3d at 134 ("[W]e will follow the Supreme Court's lead and look to the Restatement to determine the elements required to prove that claim."). To define "actual fraud" the Supreme Court looked to the definition of "fraudulent misrepresentation" under the Restatement, which defines the tort as:

> One who fraudulently makes a misrepresentation of fact, opinion, intention, or law for the purpose of inducing another to act or to refrain from action in reliance upon it, subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

*Restatement (Second) of Torts* § 525 (1976).

Thus, under the Restatement, "a plaintiff must prove four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." *Biondo*, 180 F.3d at 134.

Here, the Plaintiffs satisfied every element necessary to succeed on their § 523(a)(2)(A) action: (1) the Debtor misrepresented that the car was worth $2,850.00, that there was little or no interest charged on the transaction, that the car was in "good" condition and under warranty, and the Debtor failed to disclose the terms of credit; (2) the misrepresentations induced the Plaintiffs to purchase the vehicle; (3) the Plaintiffs' reliance on the Debtor's misrepresentation caused injury to

5

the Plaintiffs; and (4) the Plaintiffs' reliance was justifiable.[3]

### i.  TILA Violations

The Plaintiffs assert that the Debtor's fraudulent misrepresentation is evident from the State Court's determination that the Debtor violated TILA by hiding the interest charged on the sale in the inflated price of the vehicle and did not provide any disclosure of the terms of credit.

Regarding the misrepresentation of interest, the State Court ordered that the contract be rescinded and awarded out of pocket expenses incurred by the Plaintiffs, the $185 licensing and registration fee, statutory damages of $1,000.00, and attorney fees and costs for the TILA violation. Although the State Court allowed out of pocket expenses incurred by the Plaintiffs to be awarded, no such damages were included in the State Court judgment award, and are therefore not excepted from the Debtor's anticipated bankruptcy discharge.

Consequently, the $185 licensing and registration fee, the $1,000.00 award, along with corresponding attorney fees and costs, will be excepted pursuant to § 523(a)(2)(A) because the award is a debt arising from the Debtor's fraudulent acquisition of money.

### ii.  Magnuson-Moss Warranty Act

The Plaintiffs assert that the Debtor's misrepresentations of the vehicle's condition during the sale negotiations results in debt arising from those misrepresentations being excepted from discharge pursuant to § 523(a)(2)(A), on the grounds that the Debtor obtained the Plaintiffs' money as a result of his misrepresentations.

The State court awarded $5,000.00 to the Plaintiffs for annoyance and inconvenience stemming from the Debtor's breach of warranties after he misrepresented the condition and merchantability of the vehicle.  The State Court also awarded attorney fees and costs for the Debtor's violation of the Magnuson-Moss Warranty Act.  The State Court did not, however, award actual damages incurred as a result of the Debtor's misrepresentations of the vehicle condition.

---

[3]On summary judgment, the fourth element necessary to succeed on a § 523(a)(2)(A) action – justifiable reliance – was not in the record before the court.  However, at trial, the Plaintiffs presented credible testimony regarding the reasonableness of their reliance. Particularly, the Plaintiffs had purchased another vehicle from the Debtor and did not have any problems; based on their past experience, they thought the Debtor to be a reliable and honest businessperson.

Consequently, the $5,000.00 award, along with the corresponding attorney fees and costs, will be excepted pursuant to § 523(a)(2)(A) because the award is a debt arising from the Debtor's fraudulent obtainment of money.

Because the successful § 523(a)(2)(A) action is based on misrepresentations that resulted in liability under the TILA and the Magnuson-Moss Warranty Act, all debts arising from those misrepresentations will be excepted from the Debtor's anticipated bankruptcy discharge.

**B.  Section 523(a)(6): Willful and Malicious Injury**

In the underlying State Court litigation, the Debtor was found to have committed multiple violations of the WVCCPA, including: (1) a failure to provide the Plaintiffs with notice of the right to cure before repossession; (2) entering Bethany Cole's workplace, confronting her using profanity and disclosing her debts, and then enlisting her friends in what was essentially a carjacking; and (3) damaging her property during the repossession.  The Plaintiffs seek to except the award of damages pursuant to the WVCCPA from the Debtor's anticipated bankruptcy discharge pursuant to § 523(a)(6).

Section 523(a)(6) of the Bankruptcy Code provides that a discharge in bankruptcy does not apply to any debts that arise from the "willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  The test is conjunctive; thus, a willful injury by itself is insufficient to support a cause of action unless the act was also done maliciously. *In re Miera*, 926 F.2d 741, 743 (8th Cir. 1991).  Section 523(a)(6)'s exception from discharge is associated with the law of intentional torts, and conduct that is negligent or reckless remains dischargeable.  *Kawaauhau* v. *Geiger*, 523 U.S. 57, 60 (1998).  As stated by the Court of Appeals for the Fourth Circuit:

> [Section] 523(a)(6) applies only to "acts done with actual intent to cause injury."
>
> Section 523(a)(6) is not satisfied by negligent, grossly negligent, or reckless conduct. Moreover, the mere fact that a debtor engaged in an intentional act does not necessarily mean that he acted willfully and maliciously for purposes of § 523(a)(6). "Nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."

*Duncan* v. *Duncan (In re Duncan)*, 448 F.3d 725, 728 (4th Cir. 2006).

Thus, for an injury to be "willful," the debtor must have intended the consequences of the

debtor's act.   More specifically, intentional conduct occurs when a debtor knows that the consequences flowing from the complained of acts are certain, or are substantially certain to occur. *Barclays American/Business Credit., Inc.* v. *Long (In re Long)*, 774 F.2d 875, 881 (8th Cir. 1985) (adopting the definition of "intentional" as stated in *Restatement (Second) of Torts* § 8A, comment b (1965)).   For an act to be "malicious," the act must be targeted at the plaintiff, at "least in the sense that the conduct is certain or almost certain to cause financial harm." *Id.* at 881.   A "malicious act" is "[a]n intentional, wrongful act performed against another without legal justification or excuse." *Black's Law Dictionary* 977 (8th ed. 2004).   Because a debtor will rarely, if ever, admit to acting in a willful and malicious manner, those requirements may be inferred from the circumstances surrounding the injury at issue. *St. Paul Fire & Marine Ins. Co.* v. *Vaughn*, 779 F.2d 1003, 1010 (4th Cir. 1985).

In sum, for a debt to be excepted from a debtor's discharge pursuant to § 523(a)(6), the plaintiff must prove three elements by a preponderance of the evidence: (1) that the defendant's actions caused an injury to the plaintiff's person or property, (2) that the defendant's actions were willful, and (3) that the defendant's actions were malicious.

Here, the record – including evidence adduced at trial – falls short of establishing maliciousness for purposes of § 523(a)(6).   The State court made multiple factual findings regarding the wrongful conduct of the Debtor:   The Debtor failed to provide the Plaintiffs with a notice of right to cure before repossession; the Debtor entered Ms. Cole's workplace, confronted her using profanity, and disclosed her debt; and then the Debtor enlisted her friends to aid in a repossession of the vehicle that was tantamount to a carjacking.   Here, as in *Duncan*, a finding of maliciousness was not essential to establishing liability in the underlying State Court litigation.   The State Court made no finding regarding maliciousness, and, in addition, the Plaintiffs failed to prove maliciousness at their § 523(a)(6) trial.   More specifically, there was no indication that the Debtor was acting in a manner inconsistent with his believed right of repossession, and although his methods were unlawful, no evidence was presented showing that the Debtor undertook the repossession or related acts with an intent to injure Ms. Cole.   Rather, he only sought to repossess the collateral upon which he held a lien and sell it to recoup his loss on the transaction.

In *Duncan*, a mother was found liable pursuant to a state wrongful death claim that required "willful and wanton conduct" after her child drowned in a bathtub.   The *Duncan* court distinguished

8

"willful and wanton conduct" from "willful and wanton" injury, finding the resulting judgment dischargeable in bankruptcy. *In re Gallagher*, 2007 WL 782183 at *3 (W.D.N.C. 2007) (relying on *Duncan* to distinguish between wrongful and malicious acts of a defendant as an element establishing liability in the underlying state court litigation and willful and malicious intent for § 523(a)(6) purposes).  By analogy, although the Debtor's conduct was wrongful – and in many respects reprehensible – the record falls short of establishing his intent to cause injury to Ms. Cole or her property.

## C.  Attorney Fees and Costs

The Plaintiffs assert that the attorney fees and costs awarded in the State Court litigation are also excepted from discharge as debts arising from the Debtor's fraudulent obtainment of money pursuant to § 523(a)(2)(A).

It is clear that attorney fees and costs awarded in conjunction with an award of damages, pursuant to a State Court proceeding, that is deemed to be non-dischargeable, are likewise non-dischargeable.  *Cohen*, 523 U.S. at 223.  It is less clear what the amount of attorney fees and costs to be excepted from discharge should be when the Plaintiffs only partially prevail.[4]  In West Virginia, trial court's are not permitted to apply a pro rata reduction of fees based on the ratio of claims prevailed upon, *Heldreth v. Rahimian*, 219 W.Va. 462, 469 (2006), but courts "may attempt to identify specific hours that should be eliminated, or . . . simply reduce the award to account for the limited success."  *Id*. (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)).

Here, the State Court awarded attorney fees and costs in conjunction with its judgment in favor of the Plaintiffs.  As outlined above, the Debtor violated three consumer protection statutes – TILA, the Magnuson-Moss Warranty Act, and the WVCCPA.  Of the three causes of action pursued in the State Court, the Debts arising from the TILA and Magnuson-Moss Warranty Act violations are non-dischargeable.  Because only the debts arising from the TILA and Magnuson-Moss Warranty Act violations are non-dischargeable, a reduction in the amount of attorney fees and costs is appropriate for non-dischargeability purposes so as to account for partial success in this

---

[4]The Plaintiffs prevailed on all causes of action in the State Court.  However, only those debts arising from the Debtor's fraudulent obtainment of money are excepted from his anticipated bankruptcy discharge.  Therefore, only the attorney fees and costs associated with the TILA and Magnuson-Moss violations may be likewise excepted from discharge.

9

court.

It appears to the court that the three individual causes of action arise out of a common nucleus of operative facts. It also appears that Plaintiffs' counsel would have spent a modest amount of time developing the WVCCPA cause of action over and above the time spent developing the factual bases for recovery common to all three causes of action. The facts specific to the WVCCPA are that the Debtor failed to provide the Plaintiffs with notice of the right to cure before repossession, entered Ms. Cole's workplace, confronted her using profanity and disclosed her debts, and then enlisted her friends in what was essentially a carjacking, and damaged her property during the repossession. Thus, this court finds that it is proper to only modestly reduce the award to account for the limited success. The State Court found that 30.1 hours was a reasonable amount of time and the hourly fee of $300 was a reasonable fee, for a total fee award of $9,000.30 and costs of $681.00. This court finds that a 25% reduction is appropriate in this case to account for the Plaintiffs' limited success in this court. Therefore, $6,750.23 of the attorney fees and $510.75 of the costs awarded by the State Court are excepted from the Debtor's anticipated bankruptcy discharge.

### III. CONCLUSION

For the above-stated reasons, $6,185.00[5] of the debt owed to the Plaintiffs, plus $6,750.23 in attorney fees and $510.75 of the costs awarded, and post-judgment interest at the statutory rate of 7%, will be excepted from the Debtor's anticipated discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and/or (6). The court will enter a separate order consistent with this memorandum opinion.

---

[5]The damage award of $12,912.36 under the WVCCPA is dischargeable if the Debtor receives his anticipated bankruptcy discharge.